UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**JOHN ANDERSON,**

             Plaintiff,

  v.                                          Case No. 15-cv-725-pp

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

             Defendant.
_____

**DECISION AND ORDER REVERSING THE COMMISSIONER'S DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS**
_____

Plaintiff John Anderson seeks judicial review of the final decision of the acting Commissioner of Social Security (Commissioner), who found that Anderson was not "disabled" within the meaning of the Social Security Act. The Social Security Administration's Appeals Council denied review, making the administrative law judge's (ALJ) decision the final decision of the Commissioner. 20 C.F.R. § 416.1481; Schomas v. Colvin, 732 F.3d 702, 707 (7th Cir. 2013).

The ALJ applied the five-step analysis in 20 C.F.R. § 416.920(a)(4) and found that Anderson had not engaged in substantial gainful activity since his alleged November 2, 2012, date of disability (step one). He also found that Anderson's alcohol dependence and anxiety disorder are severe impairments; his other mental impairments, however, are non-severe, as are all his physical

1

impairments of blood disorders, hypertension, chest pain, hip pain and other musculoskeletal symptoms, cholesterol issues, difficulty hearing, history of tongue cancer, and gastro-esophageal reflux (step two), and that Anderson does not have an impairment or combination of impairments that meet or equal the listing of impairments found at 20 C.F.R. Part 404, Subpart P, App. 1 (step three).

The ALJ further found that Anderson has the residual functional capacity (RFC) for a full range of work at all exertional levels with the following non-exertional limitations: allowing him to perform simple, routine, repetitive tasks at a job in which he can be off task up to five to ten percent of the work period, with only occasional changes in the work-setting and no fast-paced work. Consequently, he is not able to perform any past relevant work (step four). However, using the medical vocational guidelines as a framework for decision-making, and considering Anderson's age, education, past work experience (with the transferability of work skills not being material) and RFC, the ALJ found that substantial gainful employment as a kitchen helper, laundry worker, cleaner of vehicles/equipment and machine bearer or off bearer would be available in significant numbers in the national economy (step five) and, therefore, Anderson was not disabled through the February 19, 2015, date of the decision.

Anderson contends that the case should be remanded for a further hearing, because the ALJ improperly minimized the opinion of treating physician Dr. Francis J. Cuevas, a specialist in blood disorders, after

improperly finding that Anderson's blood disease[1] is not severe. Further, Anderson contends that the RFC fails to account for his panic attacks.

To uphold the denial of benefits, the ALJ's decision must be supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. Beardsley v. Colvin, 758 F.3d 834, 836-37 (7th Cir. 2014). An ALJ's credibility determination is entitled to "special deference." Schomas, 732 F.3d at 708. The

---

[1] Polycythemia vera is "a slow-growing type of blood cancer in which [the] bone marrow makes too many red blood cells. Polycythemia vera may also result in production of too many of the other types of blood cells — white blood cells and platelets. These excess cells thicken [the] blood and cause complications, such as such as a risk of blood clots or bleeding." See Polycythemia vera, available at http://www.mayoclinic.org/diseases–conditions/polycythemia–vera/basics/definition/con–20031013 (last visited Aug. 16, 2016). Polycythemia vera "isn't common" and "[w]ithout treatment, polycythemia vera can be life-threatening. However, with proper medical care, many people experience few problems related to this disease." Id.

The on-line consumer version of Merck Manual states:

> . . . People may feel tired and weak, light-headed, or short of breath, or develop symptoms caused by blood clots. . . . Phlebotomy is done to remove excess red blood cells, and some people take aspirin and sometimes other drugs. In polycythemia vera, the excess of red blood cells increases the volume of blood and makes it thicker, so that it flows less easily through small blood vessels.

http://www.merckmanuals.com/ (last visited Aug. 15, 2016).

3

Case 2:15-cv-00725-PP   Filed 09/30/16   Page 3 of 14   Document 18

court will reverse an ALJ's credibility finding only if it is patently wrong. See Pepper v. Colvin, 712 F.3d 351, 367-68 (7th Cir. 2013).

The ALJ must articulate, at least minimally, his analysis of all relevant evidence, Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994), and "the [ALJ's] decision . . . cannot stand if it lacks evidentiary support or an adequate discussion of the issues," Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Additionally, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

At step two of the analysis, the ALJ determines whether the claimant has an impairment or combination of impairments that is severe. Castile v. Astrue, 617 F.3d 923, 926 (7th Cir. 2010); 20 C.F.R. § 416.920(a)(4)(ii). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination "is a threshold issue only." Arnett v. Astrue, 676 F.3d 586, 591 (7th Cir. 2012.). If the ALJ fails to find one impairment severe, but finds that another is severe and continues with the sequential analysis, any step two error is harmless. See id. (holding that any error in omitting a severe impairment was harmless where the ALJ found two impairments severe and continued with the remaining steps of the evaluation process); Castile, 617 F.3d at 927. In this case, any error at step two is harmless because the ALJ found that Anderson's alcohol dependence and anxiety disorder are severe, and because the ALJ evaluated the effect of all Anderson's impairments on his RFC.

4

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96-8p, based upon medical evidence as well as "other evidence, such as testimony by the claimant or his friends and family," Murphy v. Colvin, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). See 20 C.F.R. § 416.929(a) (in making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how his symptoms affect his daily life and ability to work). An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. Golembiewski v. Barnhart, 322 F.3d 912, 917 (7th Cir. 2003); Zurawski v. Halter, 245 F.3d 881, 888 (7th Cir. 2001). Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. Golembiewski, 322 F.3d at 917. Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. Berger v. Astrue, 516 F.3d 539, 545 (7th Cir. 2008); Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004).

An ALJ is not required to give the treating opinion controlling weight. The ALJ must, however, provide a sound explanation for a decision to reject the treating physician's opinion and to accept an alternate opinion. Jelinek v. Astrue, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. § 416.927(c)(2). Moreover, even when an ALJ offers good reasoning for refusing to give controlling weight to a treating physician's opinion, he must still decide what weight to give that opinion. Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010). ALJs are

required to rely on expert opinions instead of determining the significance of particular medical findings themselves. Moon v. Colvin, 763 F.3d 718, 722 (7th Cir. 2014); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")

In evaluating Anderson's blood disorder, the ALJ relied on Anderson's reports regarding his response to treatment, his "eventual denial of fatigue," and the observations of Dr. Cuevas and Mary B. Snell, M.D., his primary care physician. (Tr. 21.)

The medical evidence establishes that Anderson was initially diagnosed with polycythemia vera in January 2010 by hematologist Lewis R. Domke, M.D., who recommended treatment with weekly phlebotomies for four weeks. (Tr. 430-31.) Due to conflicts — Anderson's genetic testing initially reported as positive and then reported a day later as negative — Dr. Domke withheld such treatment because he was uncertain about Anderson's diagnosis. (Tr. 430.) However, he told Anderson to stop smoking, that his blood pressure needed to be controlled, and that future treatment might include therapeutic phlebotomies but that would be "very temporary." (Tr. 429.)

As of May 2010, Anderson told Dr. Snell that he had not seen Dr. Domke for a couple of months, he was "just tired," and he was going to trial on charges of driving while intoxicated. (Tr. 405.) Dr. Snell noted a trace of edema (swelling caused by excess fluid trapped in the body's tissue) and that the polycythemia vera was lower since Anderson had treatment phlebotomy. (Tr. at 405-07.) She

6

also documented fatigue, stating that it was multifactorial but could be sleep apnea. (Tr. 407.)

In February 2012, Anderson told Dr. Snell that in January he had been released after thirteen and a half months in jail. (Tr. 399.) He had dyspnea (shortness of breath) on exertion if carrying too much, and a trace of edema. (Tr. 400.) In April 2012, Dr. Snell noted Anderson's polycythemia vera and that he had seen Dr. Domke. (Tr. 398.)

In April 2013, Mina Khorshidi, M.D., a non-treating, non-examining internist, completed a form evaluation of Anderson's medically determinable impairments, finding that he had anxiety-related disorders and substance abuse addiction disorders but no other severe medical impairments. (Tr. 82-93.) Khorshidi found that Anderson's statements regarding his symptoms were only partially credible. (Tr. 89.)

In late August 2013, Dr. Cuevas first saw Anderson and recorded Anderson's reported fatigue and shortness of breath on exertion. Dr. Cuevas found elevated white and red blood cells, and high hemoglobin levels.

In October 2013, Dr. Cuevas scheduled a therapeutic phlebotomy. In November 2013, Anderson told Dr. Cuevas that the phlebotomy made him feel better. (Tr. 527.) Dr. Cuevas recommended hemograms every six weeks and phlebotomy if hemoglobin levels were greater than 18. (Tr. 529.)

In November 2013, Douglas Chang, M.D., a non-treating, non-examining physician, reviewed the medical evidence and noted that "[b]lood work indicates that [Anderson] has erythrocytosis and leukocytosis. He was treated

7

for the same condition years ago. *This condition can cause fatigue and joint pain but appears it will be resolved in less than a year with therapeutic phlebotomy.*" (Tr. 100.) (Emphasis added.) Dr. Chang found the impairment non-severe.

On February 12, 2014, Anderson told Dr. Cuevas that he actually felt better since phlebotomies. (Tr. 530.) Dr. Cuevas continued to recommend an every-six-week hemogram with phlebotomy for hemoglobin levels higher than 18. (Tr. 532.) He also recommended that Anderson stop smoking.

In May 2014, Anderson complained of fatigue while stating that it was somewhat better. (Tr. 533.) Dr. Cuevas directed hemograms every four weeks and phlebotomy if hemoglobin was higher than 18, and told Anderson to stop smoking. (Tr. 534.)

In July 2014, Anderson told Dr. Cuevas that he actually was feeling better, had more energy, was able to do more, and was breathing better, but was still smoking cigarettes. (Tr. 536.) Dr. Cuevas continued the treatment protocol.

In October 2014, Anderson complained of fatigue. (Tr. 539.) Dr. Cuevas urged Anderson to stop smoking and continued with the hemograms every four weeks and phlebotomy if hemoglobin was higher than 18.

In December 2014, when Dr. Snell was conducting her annual examination, Anderson reported that he had not had a phlebotomy in his last two visits with Dr. Cuevas because his CBCs (complete blood counts) were just at the borderline. (Tr. 765.) She reported the exam was negative for fatigue. (Tr. 767.)

8

By a January 21, 2015 form, Dr. Cuevas reported that fatigue with daily activities was consistent with symptomatology medically associated with polycythemia vera. Given his affirmative answer and choices of sedentary, light, and medium work as defined by the Social Security regulations, Dr. Cuevas indicated that Anderson would be capable of sustaining light work "in the context of full-time employment." (Tr. 774.)

In his evaluation of the medical evidence, the ALJ gave "great weight" to the opinions of Drs. Khorshidi and Chang regarding the impact of Anderson's physical impairments, noting that both concluded that Anderson did not have a severe physical impairment. (Tr. 23.) Dr. Khorshidi's opinion, however, pre-dated Dr. Cuevas's treatment of Anderson. Dr. Chang's opinion noted Dr. Cuevas's August 2013 examination, and indicated that Anderson's condition would resolve in less than a year. (Tr. 100.)

Dr. Chang did not review the medical evidence from the majority of the treatment of Anderson's blood disorder. Dr. Cuevas, a hematologist, treated Anderson for the blood disorder longer than Dr. Chang projected, and in May 2014, Dr. Cuevas ordered more frequent hemograms. The record does not disclose whether either non-examining doctor specialized in hematology. A specialist's opinion is generally accorded more weight than that of an non-specialist. 20 C.F.R. 416.927(c)(5).

The Commissioner side-steps the issue raised by Anderson and, instead, focuses on the ALJ's analysis of Dr. Cuevas's opinion. She cites the ALJ's findings that Dr. Cuevas's opinion lacked objective support, was inconsistent

9

with Anderson's reported improvements with respect to fatigue and energy, and was inconsistent with Dr. Cuevas's own observations and exam findings. Dkt. No. 14, 4-6.

The Commissioner and the ALJ overstate the record. The medical record reflects a fluctuation in Anderson's fatigue rather than consistent improvement. Moreover, the ALJ's recitation of Anderson's ability to perform daily tasks — he reports that Anderson is able to manage basic household chores and prepare meals for himself — is selective. Even the non-examining physicians noted that Anderson makes "simple meals." (Tr. 89, 100.)

Anderson's ex-wife, Laura Anderson, whom the ALJ gave significant weight as a source of factual information (Tr. 33), reported that Anderson watched television from the time he woke up until he went to bed, did crossword puzzles, and might go for a walk on a good day. (Tr. 264, 268.) She estimated that he went outside a few times a week. (Tr. 267.) He "seldom washe[d] his clothes" and he did laundry if she or her mother brought coins and told him to do the laundry. (Tr. 265-66.) With respect to personal care, he bathed every three days, only shaved when he bathed, and his hair was often greasy and was getting long. (Tr. 265.) She and her mother took him grocery shopping or to Walmart every two weeks and it took two or three hours (Tr. 267.) He did not shop on his own, and his ex-wife or her mother also took him to the pharmacy and to medical appointments. (Tr. 267, 268.) He cleaned every couple months and would usually clean if he expected guests. (Tr. 266.) He

10

Case 2:15-cv-00725-PP   Filed 09/30/16   Page 10 of 14   Document 18

prepared daily meals such as frozen pizza, canned food, sausage-cheese and crackers, chips. (Tr. 266.)

The ALJ indicated that Laura Anderson reported Anderson's "broad range of activities of daily living." (Tr. 33.) As has been emphasized, an ability to engage in sporadic activities does not equate with the ability to work eight hours a day, five consecutive days of the week. See Roddy v. Astrue, 705 F. 3d 631, 639 (7th Cir. 2013) ("[w]e have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time"); Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004) (the ALJ failed to consider the difference between a person's being able to engage in sporadic physical activities and being able to work eight hours a day, five consecutive days of the week).

Additionally, improvement in Anderson's fatigue is not necessarily inconsistent with fatigue limiting him to light work, rather than allowing him to perform the full range of work (or medium work) with the additional non-exertional limitations. The ALJ erred when he relied upon non-examining physicians who did not consider either Anderson's treatment course and response to treatment in terms of the level of his fatigue, or Dr. Cuevas's January 2015 opinion. See Stage v. Colvin, 812 F.3d 1121, 1125 (7th Cir. 2016) (holding that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating the significance of

a treating specialist physician's report himself.) See also Goins v. Colvin, 764 F.3d 677, 680 (7th Cir. 2014).

In making the RFC determination, the ALJ must determine and articulate the weight applied to each medical opinion. SSR 96-8p. A treating physician's medical opinion is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record. Roddy, 705 F.3d at 636; Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004); 20 C.F.R. § 416.927(c)(2). Because fatigue, recognized by Dr. Chang as a part of Anderson's blood disorder, may impact the RFC determination and the types of jobs which Anderson may be able to perform in the national economy, this case must be remanded for further analysis.

The ALJ found that Anderson's anxiety disorder is a severe impairment and limited him to "simple, routine and repetitive tasks at a job in which he is allowed to be off task up to five-to-ten percent of the work period, with only occasional changes in the work setting and no-fast paced work." (Tr. 19, 26). The ALJ relied, however, upon Anderson's failure to obtain psychiatric treatment for his anxiety as a basis for finding Anderson's allegations of disabling panic attacks not fully credible:

> Notably, there is little medical evidence supporting [Mr. Anderson's] allegations as to the severity and frequency of what he terms "panic attacks"; rather, [his] subjective claims and his [ex-] wife's supporting statements are the primary evidence on this matter. Yet, if [he] was experiencing genuine, severe panic attacks three times a day on average, as he claims, one would expect he would follow his doctor's advice and seek treatment as needed. *Yet, as explained above, he consistently ignored his primary care physician's advice to accept professional*

12

> *mental health expertise, and possibly even make an effort to completely abstain from alcohol use, as his doctor advised.*

(Tr. 30.) (Emphasis added.)

It is true that "infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." <u>Beardsley</u>, 758 F.3d at 840 (quoting <u>Craft v. Astrue</u>, 539 F.3d 668, 679 (7th Cir. 2008) citing Social Security Ruling 96-7p). But the ALJ may not draw any inferences "about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." <u>Id.</u> The transcript does not reveal that the ALJ asked Anderson about why he had not followed Dr. Snell's recommendation that he obtain mental health treatment for the anxiety attacks. (Tr. 47-60, 62-67.)

As a result of the foregoing errors, the ALJ's determination that Anderson is not disabled because he can perform a significant number of jobs in the national economy is not supported by substantial evidence. Therefore, pursuant to sentence four of 42 U.S.C. § 405(g), the court will reverse the ALJ's decision and remand the case to the Commissioner for further proceedings consistent with this decision.

The court **ORDERS** that Anderson's appeal is **GRANTED**. Dkt. No. 1.

The court further **ORDERS** that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is **REVERSED**, and this case is **REMANDED** to the Commissioner for further proceedings consistent with this decision.

The Clerk of Court shall enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of September, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge